IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| RONALD GARY, | ) | Civil Action No.: 4:06-2216-PMD-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| NFN BREWINGTON, RN; NFN | ) | |
| SHERMAN, M.D., DFN | ) | |
| DOIGHERTY,  DIRECTOR OF | ) | |
| GREENVILLE COUNTY DETENTION | ) | |
| CENTER, GREENVILLE COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.  PROCEDURAL BACKGROUND

The plaintiff, Ronald Gary ("plaintiff/Gary"),  filed this action under 42 U.S.C. § 1983[1] on

August 4, 2006. At all times relevant to the allegations in the plaintiff's complaint, he was housed

at the Greenville County Detention Center ("GCDC"). Plaintiff alleges that his constitutional rights

were violated. On January 7, 2008, plaintiff filed a motion for summary judgment. (Document #57).

Defendants filed a response. Defendants filed a motion for summary judgment on March 14, 2008,

along with a memorandum, affidavit, and exhibits in support of that motion (document #26).

Because the plaintiff is proceeding pro se, he was advised on or about March 17, 2008, pursuant to

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to the defendants'
motion for summary judgment with additional evidence or counter affidavits could result in
dismissal of his complaint.  The plaintiff filed a response in opposition on April 15, 2008.

## II.  DISCUSSION

### A.  ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges that his constitutional rights were violated due to a deliberate
indifference to his medical needs. Specifically, plaintiff alleges that he contracted a staph infection
while incarceration at the GCDC. Plaintiff further alleges that he contracted the staph infection
because he was placed in a cell with two other inmates who were carriers of staph infections.
Additionally, plaintiff asserts that defendants were negligent and placed him at a risk of harm by
placing him n the same cell with inmates who were carriers of the staph infection. Further, plaintiff
alleges that he was treated with antibiotics for the staph infection and that the infection is no longer
present. Plaintiff seeks damages for the allegedly visible scars on his face and the possibility of
reoccurrence. Plaintiff alleged in his complaint that the defendants at the GCDC were "negligent for
failing to maintain a sanitary environment as a prevention against the spread of the staph infection"
and "neglected to properly house fellow inmates in a manner which would prevent a spread of the
staph infection." (Complaint). On August 15, 2006, (document #5) plaintiff filed an additional
attachment to his complaint in which he alleged that he had contracted another staph infection on
or about August 1, 2006, while housed in Room #18 at the GCDC. Plaintiff alleges that a small
pimple appeared on his pubic area and he was rehoused to cell block M-2. Plaintiff asserts this cell
block was the quarantine for all inmates who had contracted a staph infection while housed at the

2

GCDC. Plaintiff alleges that prior to being re-housed to cell M-2 from yellow pod #18, the pimple had enlarged to the size of a golf ball. Plaintiff asserts that he was given antibiotics and pain pills. Plaintiff alleges that the symptoms of the staph infection were still present and that he was currently under quarantine and still taking medication.

On September 21, 2007, plaintiff was allowed to file an amended complaint. In this amended complaint, plaintiff alleges that the nurse examined him in June 2006, while housed as a pretrial detainee at the GCDC for a pimple that appeared on the corner of his left nostril and instructed him to wait a few days "to see what develops." Plaintiff asserts that he submitted another medical form to have the pimple checked again as it had enlarged, had a hole in it, and another pimple was beginning to form. Plaintiff alleges that he was examined by the on duty nurse on June 10, 2006 who prescribed an antibiotic, Bactrim. Plaintiff alleges that the infection occurred as a result of being housed with a Mr. Timothy McIntosh during the month of May 2006, who was a carrier of this staph disease prior to and during his stay in cell #18. Plaintiff alleges that in June 2006, he was allowed to be housed with a Mr. Michael Foster who was also a carrier of the staph disease who had been under quarantine for the same prior to his arrival to cell #18. Plaintiff alleges as follows, quoted verbatim:

> After receiving the antibiotics for the staph disease, the symptoms did subside, but the scars still remain as well as a possible re-occurrence of this disease. The plaintiff continues to be housed inside cell #18 and in turn, on or about August 1, 2006 a small pimple appeared on his pubic area. A medical 502 was again filed as the pimple had enlarged to the size of a golf ball. This infected area was draining blood and puss which was associated with severe pain. The plaintiff was then removed from cell #18 and re-housed to cell block m-2 which was the quarantine for all inmates who'd contracted the more severe form of the staph disease known as MRSA. The plaintiff remained under quarantine for approx 3 weeks while being treated

3

> with antibiotics for eradication of the diseases and meds for eradication of pain. The plaintiff in this action firmly believes that the County of Greenville and it's Detention Center as well as it's medical staff/supervisory personal were all negligent in fact for failing to maintain/provide a sanitary environment as a prevention against the spread of this disease, by neglecting to properly house inmates in a manner which would prevent the spread of this communicable/contagious disease.

(Document #42, amended complaint).

Further, plaintiff alleges in his complaint that the GCDC was negligent in failing to maintain a sanitary environment to prevent the spread of the staph infection, and failed to properly house fellow inmates which would prevent the spread of the staph infection, i.e. placing him in a cell with an inmate with the staph infection which led to plaintiff contracting the infection. Plaintiff seeks compensatory damages in the amount of "45,000.00".

As stated above, defendants filed a motion for summary judgment asserting that there was no deliberate indifference to plaintiff's medical needs, that defendants had no personal involvement with the plaintiff, that there is no liability under respondeat superior, that they are entitled to qualified immunity, that there is no supervisory liability, and that defendants are immune under the S.C. Tort Claims Act.

## B. STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The

4

requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, <u>Weller v. Department of Social Services</u>, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).  The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and <u>Celotex v. Catrett</u>, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  <u>See</u> Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the <u>Celotex</u> case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  <u>Celotex</u>, 477 U.S. at 322-323.

### C.  LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the

Eighth Amendment.  Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987).  The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished.  An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual."  Bell v. Wolfish, 441 U.S. 520 (1979).  Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime.  Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials.  If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld.  Bell, 441 U.S. at 538.

Since the plaintiff is proceeding pro se, this court is required to treat his filings and pleadings with some degree of liberality.  Estelle v. Gamble, 429 U.S. 97 (1976); Hughes v. Rowe, 449 U.S. 9 (1980) (per curiam).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  Hughes v. Rowe, 449 U.S. 5, 66 L.Ed.2d 163, 101 S.Ct. 173 (1980)(per curiam). However, plaintiff is cautioned that the court may not rewrite his pleadings; Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct defendant's legal arguments for him, Small v. Endicott, 998 F.2d 411, 417-418 (7th Cir. 1993), or "conjure up questions never squarely presented"

to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986). Further, while the court should afford a *pro se* litigant every reasonable opportunity to construct and present his side, the court cannot act as counsel for the *pro se* litigant or excuse a failure to comply with the rules of this court.

## D. MEDICAL INDIFFERENCE

As previously discussed in detail above, plaintiff alleges medical indifference while a pretrial detainee at the GCDC where he developed a staph infection.

Defendants filed their motion for summary judgment asserting that plaintiff's allegations that defendants failed to provide appropriate medical care and treatment and that there was medical indifference to his medical needs must fail. Defendants assert that plaintiff received timely and appropriate medial care for the symptoms he presented and all of the medical care provided to the plaintiff was appropriate, reasonable, and timely.

Defendants submitted the affidavit of Sonya Moss, registered Nurse, who attests that she is employed by the GCDC as part of the medical team for the Medical Clinic at the GCDC. Moss attests that she is currently serving as the Nursing Supervisor of the Medical Clinic and in her role she is called upon to review the records of inmates that are incarcerated at the GCDC. Moss avers that she  reviewed the records of the plaintiff. Moss asserts that based upon the Medical Request Form 502 filed by plaintiff on June 10, 2006, and after the assessment of him by a member of the medical staff, it was found that he had symptoms consistent with a possible staph infection. Moss attests that plaintiff was started on a regimen of antibiotic Bactrim DS po bid for a period of 7 days on June 13, 2006. Thereafter, plaintiff was rechecked on June 20, 2006, with a finding of no further

7

intervention needed as of that date. Moss attests that in response to an additional Medical Request Form 502 filed by plaintiff on July 28, 2006, with symptoms consistent with MRSA and after being assessed by a member of the medical staff, antibiotics along with pain medication were prescribed for Mr. Gary. Moss attests that plaintiff was housed in Cell Block M2 as of August 1, 2006, awaiting the results of the wound culture that was done on said day. As a result of the culture, Moss attests that plaintiff was transferred to M3 and remained there until August 21, 2006, during his treatment period for MRSA. She attests that the treatment rendered to the plaintiff was appropriate, reasonable and timely in her opinion and that all reasonable precautions were in place and followed to prevent the spread of MRSA. Defendants also submitted a copy of plaintiff's medical request form from June 2006, and a copy of a page of the plaintiff's medical records revealing the medication he received.

Plaintiff has alleged in his response that defendants failed to follow the protocol as established by the Federal Bureau of Prisons in the management of MRSA infections. Furthermore, plaintiff has asserted in his response in opposition to defendants' motion for summary judgment that he was required to clean shower stalls and refused proper sanitation afterwards. (Plaintiff's response, document # 81).

The undersigned finds that the plaintiff fails to show that defendants were deliberately indifferent to his medical needs. In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976).  The Court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . .  We therefore conclude that deliberate indifference

> to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the Court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was

aware at the time, the plaintiff may not prevail.  Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

In order to establish a prima facie case under the Eighth Amendment, plaintiff must show that, objectively assessed, he had a "sufficiently serious" medical need to require treatment.  Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 104 (4th Cir. 1995) (citing cases).  "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' "  Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth Co. Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 450 U.S. 1041 (1981)).

Negligence, in general, is not actionable under 42 U.S.C. § 1983.  See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94  (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct.").  42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law.  DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989).  Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983.  Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate

indifference, <u>Farmer</u> teaches otherwise."); <u>Sellers v. Henman</u>, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); <u>White v. Napoleon</u>, 897 F.2d 103, 108-109 (3rd Cir. 1990); and <u>Smart v. Villar</u>, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal). Thus, even if the plaintiff were able to show that defendants' actions somehow constituted medical negligence or medical malpractice, these are not actionable under 42 U.S.C. § 1983.

The plaintiff has failed to show that he was denied medical treatment. Based on plaintiff's own pleadings and the affidavit of Nurse Sonya Moss, plaintiff was seen and treated by medical on several occasions. Plaintiff was prescribed antibiotics and pain medication and alleges the symptoms did subside. As far as the second occurrence of the pimple on his pubic area, plaintiff once again asserted that he was prescribed antibiotics and pain medication and was placed in quarantine for approximately three weeks. Plaintiff has not been denied medical treatment. At most, plaintiff is asserting a medical malpractice or medical negligence claim on the part of defendants. As held in <u>Estelle</u>, 429 U.S. at 107, a complaint that medical has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. At most, plaintiff has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. Additionally, plaintiff has failed to show that he had a serious medical need of which defendants knew about and consciously ignored. Plaintiff has not shown that any conduct by these defendants "shocks the conscious" as required by <u>Miltier v. Beorn</u>, <u>supra</u>.  "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the

11

treatment of his choice." <u>Jackson v. Fair</u>, 846 F. 2d 811, 817 (1st Cir. 1988).  Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary.  <u>See</u> <u>Brown v. Thompson</u>, 868 F. Supp. 326 (S.D.Ga. 1994).  Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation.  <u>See</u> <u>Smart v. Villar</u>, 547 F. 2d 112 (10th Cir. 1976); <u>Lamb v. Maschner</u>, 633 F. Supp. 351, 353 (D.Kan. 1986).  Mistakes of medical judgment are not subject to judicial review in a § 1983 action. <u>Russell v. Sheffer</u>, 528 F. 2d 318, 319 (4th Cir. 1975).

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of the plaintiff by these defendants. Therefore, summary judgment should be granted to defendants on this issue.

## E.  DELIBERATE INDIFFERENCE TO A RISK OF HARM

Plaintiff has alleged that the defendants were indifferent to a risk of harm by the unsanitary conditions at the GCDC, by not stopping the spread of the MRSA, and by allowing him to be housed in a cell with an inmate that was a carrier of the disease.

The Supreme Court recognized that punishment prohibited by the Constitution does not result from negligence on the part of prison officials.  The Supreme Court stated this principle and established the appropriate standard in <u>Whitley v. Albers</u>, 475 U.S. 312 (1986).

> [t]o be cruel and unusual punishment, conduct that does not purport to be punishment at all  must involve more than ordinary lack of due care for the prisoner's interest or safety.
> . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause. . . . <u>Id.</u>, at 1084.

12

Based on these precedents the issue is whether an inmate who has suffered injury has alleged and offered evidence that the prison officials "wantonly and obdurately failed to take precautions for his safety in deliberate indifference to a specific known risk of harm. . . ." <u>Ruefly v. Landon</u>, 825 F.2d 792 (4th Cir. 1987). The Supreme Court has recently defined "deliberate indifference" in the context of the liability of physical injury to an inmate. In analyzing case law, the court concluded that deliberate indifference must be something more than mere negligence, but less purposeful or knowing conduct. The court held: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994).

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement <u>unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference</u>. (Emphasis added). This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

<u>Id.</u> at 837-38.

13

The obduracy and wantonness standard applies to prison officials in supervisory positions as well as to guards and corrections officers who deal with inmates directly.  Thus, a supervisor must know of a specific risk or be aware of a pervasive risk of harm and act "wantonly, obdurately, or with deliberate indifference to that specific or pervasive risk of harm."  Moore v. Winebrenner, 927 F.2d 1312 (4th Cir.), cert. denied, 502 U.S. 828 (1991).

The undersigned concludes that the plaintiff has failed to prove that the named defendants as prison officials wantonly and obdurately failed to take precautions for his safety or showed deliberate indifference to a specific known risk of harm.[2] Accordingly, summary judgment should be granted in favor of defendants.


## F.  SUPERVISORY LIABILITY

Defendants assert that they are entitled to summary judgment in that plaintiff cannot maintain an action against them based on a theory of supervisory liability.  Defendants argue that plaintiff has failed to show any conduct by the defendants which would constitute a deliberate indifference to any alleged offensive practice. Thus, defendants assert there can be no supervisory liability imposed on them.

---

[2] Even though plaintiff may not agree with the way medical at the GCDC handled the cases of staph infection by placing him or other inmates in certain cell blocks or by quarantine or that he was denied a change of clothing which he alleges became contaminated after a work detail, plaintiff has failed to show on the part of these defendants that there was either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred.  Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992) (citing Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)). In addition, throughout, plaintiff relies on his own conclusory allegations on issues of medical expertise and causation relating to the medical condition of his cellmates and when and what caused him to contract the infection. His allegations alone are insufficient to create an issue of fact.

14

There are three elements necessary to establish supervisory liability under §1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994). To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. Id. citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984). Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. Id. A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." Id. Causation is established when the plaintiff demonstrates and affirmative causal link between the supervisor's inaction and the harm suffered by the plaintiff. Id. Plaintiff has failed to show that the named defendants demonstrated deliberate indifference to a known risk, or that their actions were causally related to any injury suffered by him. These defendants simply cannot be held liable for the acts of others without specific wrongdoing by them personally.[3]  Thus, it is recommended that summary judgment be granted for defendants on the

---

[3]One of the limited pieces of evidence presented by the plaintiff is a memorandum to the staff at GCDC from a Scotty R. Bodiford indicating measures to address the concerns raised by the plaintiff.

theory of supervisory liability. [4]

## G. QUALIFIED IMMUNITY

Defendants argue that they are entitled to qualified immunity pursuant to Harlow v. Fitzgerald, 457 U.S. 800 (1982). Defendants argue that to the extent the defendants in this action participated in and/or supervised, to any extent, the incarceration of the plaintiff, there is no evidence that any of the defendants were aware that any of their alleged conduct might be in violation of the plaintiff's constitutional rights. Defendants assert that plaintiff's own complaint alleged and demonstrates that he received timely care for his alleged medical constitution and there is not way that any of the defendants would have perceived that the conduct the plaintiff alleges to exist in this case would have amounted to a constitutional deprivation.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the

---

[4] Furthermore, plaintiff has failed to assert specific allegations or acts by the named party defendants which caused direct and/or indirect injury to the plaintiff. Additionally, under the doctrine of respondeat superior, an employer or supervisor is not liable for the acts of their employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) and Fisher v. Washington Metro Area Transit Authority, 690 F. 2d 1133, 1142-43 (4th Cir. 1982). The employer or supervisor may only be held liable if the plaintiff can show that they had actual knowledge of the specific danger, but were deliberately indifferent to the plaintiff's needs despite their knowledge of this danger, Slakan v. Porter, 737 F. 2d 368 (4th Cir. 1984). A medical treatment claim is not appropriate against a superintendent/supervisor absent an allegation that he was personally connected to the treatment received. Vinnedge v. Gibbs, 550 F. 2d 926 (4th Cir. 1977). Supervisory liability requires that supervisory officials failed promptly to provide an inmate with needed medical care, deliberately interfered with a prison doctor's performance, tacitly authorized or were indifferent to prison physician's constitutional violation. Milter v. Beon, 896 F.2d 848 (4th Cir. 1990).

Defendants cannot be held liable under a respondeat superior theory under Title 42, U.S.C. § 1983 for the acts of a subordinate employee. Monell, supra. Additionally, there is no evidence that these defendants were personally involved in the allegations as alleged. Thus, it is recommended that all allegations against defendants be dismissed on this theory.

burden of proving entitlement to immunity rests with the defendant asserting it.  Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity.  Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment.  For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct

17

constitutes a constitutional violation, the official is entitled to
qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824

(1995).  As discussed above, the plaintiff fails to show that the defendants violated any of his clearly

established constitutional or statutory rights. Therefore, defendants are entitled to qualified immunity

in their individual capacity.  Thus, the undersigned recommends that the defendants' motion for

summary judgment be granted on this issue.


### H.  GREENVILLE COUNTY

Defendants assert that there is no liability to the plaintiff under §1983 for any acts or

omissions on behalf of Greenville County. Defendants argue that Greenville County  has engaged

in no practice, policy, custom or procedure that is unconstitutional, nor does Greenville County have

any policy, custom, practice or procedure enforced that is unconstitutional or that is violative of the

plaintiff' constitutional rights. Defendants argue that plaintiff has failed to show that any practice,

policy, or custom of Greenville County was the moving force behind any  violation of his

constitutional rights or that there has even been a violation of his constitutional rights.

In order to maintain a 42 U.S.C. § 1983 municipal liability claim, a plaintiff must

affirmatively establish that the alleged constitutional violation was directly caused by an official

practice, policy, or custom of the municipality. Monell, supra. Based upon a review of the evidence

of record, the undersigned concludes the evidence of record fails to create a genuine issue of material

fact as to whether the plaintiff's alleged constitutional violations were "directly caused by an official

practice, policy or custom of the municipality." The plaintiff never alleged any direct allegations

against defendant Greenville County. Hence, the plaintiff failed to state a cause of action against this defendant. Therefore, it appears the plaintiff was attempting to hold the Greenville County vicariously liable for the acts of the employees at the Greenville County Detention Center. However, as stated above in <u>Monell</u>, <u>supra</u>, the Supreme Court held that municipalities cannot be held vicariously liable under §1983 for the acts of their employees. Accordingly, the plaintiff's claims against Greenville County must fail as a matter of law. The imposition of §1983 liability cannot rest on the doctrine of *respondeat superior*. <u>Zepp v. Rehrman</u>, 79 F.3d 381, 385 (4th Cir. 1996). As a result, the undersigned recommends that the defendants' motion for summary judgment be granted in this regard.[5]

## I. PENDENT JURISDICTION

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

---

[5] While plaintiff has alleged that Greenville County was required to follow the protocol procedures of the Federal Bureau of Prisons with regard to management of MRSA, neither party has submitted a copy of any such policy or shown that Greenville County and the GCDC are required to follow such policy. Absent such evidence that there was such a policy and that defendants violated a policy or procedure that they were required to follow, the undersigned cannot conclude that the <u>Monell</u> analysis would be altered.

19

## III.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

As previously stated, plaintiff has filed a motion for summary judgment. (Document # 57). Defendant filed a response. Based on the above analysis, it is recommended that plaintiff's motion for summary judgment be denied.


## IV.  CONCLUSION

The plaintiff has failed to show that defendant violated any of his constitutional or statutory rights under 42 U.S.C. § 1983.  It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by defendants (document #69) for summary judgment be GRANTED IN ITS ENTIRETY and motion for summary judgment (documents #57) filed by plaintiff be DENIED.

IT IS FURTHER RECOMMENDED that any other outstanding motions be deemed MOOT.


Respectfully Submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 4 , 2008
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

20