**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| Ronald Gary,                                           )<br>              Plaintiff,   )<br>                                                                )<br>       v.                                                      )<br>                                                                )<br>NFN Brewington, RN; NFN                    )<br>Sherman, M.D.; DFN Doigherty,         )<br>Director of Greenville County                )<br>Detention Center; Greenville                  )<br>County,                                                    )<br>              Defendants.   )<br>_____) | C.A. No.: 4:06-2216-PMD-TER<br><br>**ORDER** |

This matter is before the court on Plaintiff Ronald Gary's Objections to the Report and Recommendation ("R&R") of a United States Magistrate Judge. Plaintiff originally filed this action under to 42 U.S.C. § 1983 on August 3, 2006, which he amended on September 21, 2007, alleging that the Defendants violated his constitutional rights. On January 7, 2008, Plaintiff filed a Motion for Summary Judgment. The Defendants filed a response to Plaintiff's motion for summary judgment as well as their own Motion for Summary Judgment on March 14, 2008. As Gary is proceeding *pro se*, the court advised him on March 17, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), that if he failed to respond to Defendants' motion, a dismissal of his complaint could result. Plaintiff responded on April 15, 2008. The matter was referred to a United States Magistrate Judge, who issued a Report and Recommendation to this court on August 4, 2008, recommending that Defendants' motion for summary judgment be granted in its entirety. Plaintiff filed Objections to the Report and Recommendation on August 25, 2008. Inconsistently, Plaintiff also filed a Motion for Extension of Time to respond to the R&R on August 25, 2008. Because the court denies Plaintiff's motion for extension of time, it proceeds to address his objections to the R&R.

## BACKGROUND

**A.    Facts**

At all times relevant to the allegations in the Plaintiff's complaint, Greenville County Detention Center ("GCDC") housed Plaintiff as a pretrial detainee. While housed in cell #18 of the Yellow Housing Unit, Plaintiff developed a small pimple in the corner of his left nostril and allegedly reported the problem to a nurse on June 7, 2006. (Am. Compl. at 2.) During this examination, Plaintiff alleges that he was told to "wait a few days" to "see what develops" and then returned to cell # 18. (Am. Compl. at 2.) On June 10, 2006, Plaintiff submitted a medical request form to initiate medical care for the bump. (Objections Attach B.) A medical staff member found that Plaintiff had symptoms consistent with a possible staff infection, and Plaintiff started on a regimen of the antibiotic Bactrim DS for a period of seven days beginning on June 13, 2006. (Moss Aff. ¶ 6, Objections Attach. B.) Plaintiff alleges that he obtained the staph infection because of his May 2006 detainment in cell #18 with a Timothy McIntosh, who Plaintiff alleges carried the disease. (Am. Compl. at 2.) After being diagnosed with staph infection, Plaintiff remained housed in the Yellow Housing Unit, cell # 18, but this time with a Michael Foster, who Plaintiff also alleges carried staph infection. (Am. Compl. at 3.) A June 20, 2006 follow-up found that no further intervention was necessary regarding Plaintiff's initial infection. (Moss Aff. ¶ 6.) Although the symptoms subsided, Plaintiff alleges that the initial infection left a scar on his face and created the possibility of reoccurrence. (Pl.'s Mot. Summ. J. at 2.)

On July 10, 2006 Plaintiff submitted a second medical request form after being ordered to clean the showers inside the Yellow Housing Unit. (Objections Attach. B.) Plaintiff sought antibiotics in order to avoid a reoccurrence of the staph infection, but a July 13, 2006 notation

reveals that the medical staff determined that no medical attention was necessary. *Id.* Sometime between July 29 and July 31, 2006, Plaintiff submitted a third medical request form after an ulcer three inches in diameter formed in his pubic area. (Objections Attach C). On August 1, 2006, the medical staff found the Plaintiff's symptoms to be consistent with Methicillin Resistant *Staphylococcus Aureus* ("MRSA") and prescribed antibiotics along with pain medication. (*Id.*, Moss Aff. ¶ 7.) As of August 1, 2006, Plaintiff was moved to cell block M-2 while awaiting the results of a wound culture done on that same day. (Moss Aff. ¶ 8.) Following the results of that culture, GCDC quarantined Plaintiff in cell block M-3 until August 21, 2006, during which time he was treated for MRSA. (Moss Aff. ¶ 9.) Plaintiff seeks $45,000 in compensatory damages for scarring on his face from the first staph infection and the possibility of a reoccurrence of the infection. (Pl.'s Amend. Compl. at 9.) Plaintiff does not allege to currently have any health issues.

### B.      Plaintiff's Motion for Summary Judgment

Plaintiff's action asserts that the Defendants exhibited deliberate indifference to his medical needs and exposure to the unreasonable risk of obtaining staph infection during his pretrial detention at the GCDC. Plaintiff contends the Defendants were deliberately indifferent to his medical needs by either denying entirely or failing to provide timely treatment for his staph infections. Plaintiff also contends that the Defendants were deliberately indifferent to his exposure to staph infection by housing him in the same prison cell as carriers of the disease and failing to maintain sanitary conditions. Plaintiff believes that the facts of this case show that Defendants violated his constitutional rights, and he moves the court to grant him summary judgment on his claims.

### C.      Defendants' Motion for Summary Judgment

Defendants also moved for summary judgment, contending that the evidence shows that

Plaintiff received appropriate and timely medical care for his symptoms and that Plaintiff's staph infections subsided in response to the provided treatment. Defendants also assert that Plaintiff failed to demonstrate they acted with a sufficient culpable state of mind to establish a constitutional claim as the GCDC had a protocol to deal with detainee's exposure to MRSA and followed that protocol in dealing with Plaintiff. Defendants submitted an affidavit from Sonya Moss, the nursing supervisor of GCDC. attesting that, based on her review of Plaintiff's medical records, Plaintiff received appropriate, reasonable, and timely treatment. She also attested that, upon information and belief, all reasonable precautions were in place and followed to prevent the spread of MRSA. Defendants also argue that none of them had any personal involvement with Plaintiff and that liability under section 1983 cannot exist through a theory of *respondeat superior* or supervisor liability. Finally, Defendants seek summary judgment based on qualified immunity and immunity under the S.C. Tort Claims Act.

## STANDARD OF REVIEW

### A.    The Magistrate Judge's Report and Recommendation

The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties are allowed to make a written objection to a Magistrate Judge's report within ten days after being served a copy of the report. 28 U.S.C. § 636(b)(1). From the objections, the court reviews *de novo* those portions of the R&R that have been specifically objected to, and the court is allowed to accept, reject, or modify the R&R in whole or in part. *Id.* Additionally, the court may recommit the matter to the Magistrate Judge with instructions. *Id.* A party's failure to object is accepted as an agreement with the conclusions of the Magistrate Judge.

*See Thomas v. Arn*, 474 U.S. 140 (1985).

### B.     Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Additionally, *pro se* litigants' documents are held to less stringent standard than those drafted by attorneys, so the documents of such litigants must be read more liberally "however inartfully pleaded." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

**ANALYSIS OF PLAINTIFF'S OBJECTIONS TO THE R&R**

**A.     *Respondeat Superior* Liability**

Although the Magistrate Judge did not address this issue, in his objection to the R&R, Plaintiff argued that Defendants should be found liable under a theory of *respondeat superior*. (Objections at 4.) In their motion for summary judgment, Defendants argued that the court should find for them as a matter of law regarding any claims asserted under this theory. The court agrees, as the doctrine of *respondeat superior* generally is inapplicable to section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). Therefore, the court grants Defendants' motion for summary judgment on this issue.

**B.     Supervisor Liability Against Defendants Brewington, Sherman, and Doigherty**

Plaintiff also claims that Defendants are liable as a result of their supervisory positions. (Objections at 4.) The Magistrate Judge recommended that Defendants' motion for summary judgment be granted regarding this claim because Plaintiff failed to show how any of the Defendants' actions caused a deprivation of his constitutional rights.

Supervisory officials can be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates. This "supervisor" liability "is "not premised upon *respondeat superior* but upon 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (quoting *Slakan v. Porter*, 737 F.2d 368, 372–73 (4th Cir. 1984)). Plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed an unreasonable risk of

constitutional injury to Plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

The Magistrate Judge correctly observed that Plaintiff has failed to show any specific wrongdoing by Defendants personally. In fact, nowhere in Plaintiff's amended complaint or motion for summary judgment does he even mention Defendants Brewington, Sherman, or Doigherty. A plaintiff must affirmatively show that a defendant acted personally in the deprivation of his or her constitutional right. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir.1977). Generally speaking, when a plaintiff makes no allegations against a defendant, that defendant is properly dismissed. *See Karafiat v. O'Mally*, 54 Fed. App'x 192, 194 (6th Cir. 2002) (concluding the plaintiff's claims were "simply too vague and conclusory to support a claim under § 1983" when the plaintiffs mentioned only one named defendant in the body of their complaint and "did not present any allegations to reflect the manner in which the defendants violated their rights, or how the defendants were involved in the alleged improper conduct"); *Whaley v. Hatcher*, No. 1:08CV125-01-MU, 2008 WL 1806124, at *1 (W.D.N.C. Apr. 18, 2008) (dismissing defendant Raymond Hamrick, Sheriff, because this defendant was not mentioned in the body of the complaint and because the plaintiff "does not allege any personal conduct or any policy by Defendant Hamrick with regard to the incidents that form the basis of his Complaint"); *Lawson v. State of Commonwealth of Va.*, No. 101CV180, 2002 WL 771901, at *2 (M.D.N.C. March 22, 2002) ("[M]ost of the defendants are not even named in the body of the complaint. This, alone, constitutes a basis for dismissal as to those defendants.").

While Plaintiff's amended complaint and motion for summary judgment do not mention Dr.

7

Sherman, the court notes that one attachment to Plaintiff's objections does contain his name. Plaintiff's prescription-medicine record lists Dr. Sherman as the "Physician" dealing with Plaintiff's prescriptions between June 1 and June 30, 2006. (Objections at Attach. B.) While it appears Dr. Sherman may have prescribed Plaintiff medication during June 2006, it is unclear how he allegedly violated Plaintiff's constitutional rights. In his objections, Plaintiff stated that:

> Defendants Brewington and Sherman did participate in the causation of plaintiffs pain and suffering and should be held liable in their individual capacities. Each individual was acting under color of state law as an employee of the Greenville County Detention Center, under it's Director who was "legally responsible for the operations of the Detention Center and the welfare of all inmates of the Facility." Each defendant in concert, simply failed to follow protocol as established as mandate by the Federal Bureau of Prisons as set forth in the <u>Management of MRSA Infections</u> (August 2005).

(Objections at 11.) Besides these conclusory statements, Plaintiff did not allege any facts to show that these Defendants had actual or constructive knowledge of any risk of constitutional injury, that these Defendants demonstrated deliberate indifference to that risk, or that the actions of these Defendants were causally related to any injury suffered by him. (R&R at 15.) While Defendants may have had knowledge of MRSA infections at GCDC, this does not expose them to liability. Plaintiff's objection suggests that because Defendants were employed by GCDC at the time he contracted MRSA, they should be held responsible solely on those grounds. Defendants simply cannot be held liable to Plaintiff without specific wrongdoing by them personally, and although Plaintiff claims Defendants failed to follow protocol, Plaintiff has wholly failed to allege any facts supporting such a claim against Brewington, Sherman, or Doigherty. For example, in his memorandum in opposition to Defendants' motion for summary judgment, Plaintiff stated "a nurse practitioner," not any of the named Defendants, placed him "back in an infected environment."

Therefore, the Magistrate Judge correctly recommended granting Defendants Brewington,

Sherman, and Doigherty's motion for summary judgment. *See Clark v. S.C. Dep't of Corr.*, No. 4:07-2840, 2007 WL 2749641, at *3 (D.S.C. Sept. 20, 2007) ("The Plaintiff's placement of these Defendants in the Complaint's caption and/or 'Parties' section, without any mention of how they are connected to the case is insufficient to state a claim under § 1983."); *see also James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 198 (3d Cir. 2007) (concluding the district court did not err in dismissing the plaintiff's Eighth Amendment claims against certain defendants because the evidence shows he received medical treatment and "he simply has not alleged any facts implicating these officials").

### **C.**     **Liability Against Greenville County**

The Magistrate Judge also recommended the court grant Defendant Greenville County's motion for summary judgment because Plaintiff sought liability against it based on the doctrine of *respondeat superior*, and municipalities cannot be found vicariously liable under section 1983 for the conduct of their employees. (R&R at 19.) Defendants argued that Greenville County has not engaged in any practice, custom, or procedure, which when executed, violates Plaintiff's constitutional rights.

To prevail against the Greenville County under 42 U.S.C. § 1983 for violation of his constitutional rights, Plaintiff must prove more than the fact that the County employed those responsible for Plaintiff's alleged constitutional violations, because a section 1983 claim against a municipality cannot succeed under the doctrine of *respondeat superior*. *See Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690 (1978) ("The action that is alleged to be unconstitutional [must] implement[] or execute[] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the local government's] officers."). Instead,

9

municipal liability may attach when the "execution of the government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994)(quoting *Monell*, 436 U.S. at 694). Therefore, Plaintiff needed to plead and prove the existence of an official policy or custom that is fairly attributable to Greenville County and that proximately caused the deprivation of his constitutional rights. *Id.* Thus, the "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Collins v. City of Harker Heights*, 503 U.S. 115, 123 (1991) (quoting *Springfield v. Kibbe*, 480 U.S. 257 (1987)).

In his objections, Plaintiff stated:

> Greenville County was the employer of the defendants, Brewington, Sherman, and Dorrieghty and was thereby charged with supervising each defendant and ensuring that the customs, practices, policies and procedures the county procreated and allowed to be use at the Detention Center did not violate the Constitutional Rights of the Plaintiff.
> Greenville County Detention Center is a governmental class II Detention Facility, owned and operated by the County of Greenville. As a class II facility the Greenville County Detention Center was subject to the rules and regulations as set forth by The Federal Bureau of Prisons (Attch D). Defendant failed to operate in it's official capacity and as clearly shown was in violation of Federal mandate concerning Management of MRSA Infections.

(Objections at 12.) Also in his objections, Plaintiff reiterated his argument that "defendants failed to follow protocol as established by the Greenville County Detention Center concerning Treatment, Prevention, And Management of MRSA Infections . . . ." (Objections at 1–2, 6). Despite the Magistrate Judge's ruling in his R&R, Plaintiff still objects on the grounds that Greenville County employed the Defendants and, therefore, should be liable. As stated earlier, section 1983 liability will not be found to exist against a municipality based on vicarious liability. *Zepp v. Rehrman*, 79

F.3d 381, 385 (4th Cir. 1996). Municipal liability depends on whether the liability asserted is based on a *municipal act* and not simply on the independent act of a municipal employee, even though that employee may be acting as the final decisionmaker. *Greensboro Professional Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 964–65 (1995).(emphasis added).

Also, Plaintiff's assertion that Greenville County should be responsible for GCDC staff members' failure to comply with both the federal and Greenville County protocols for managing MRSA does not state a claim that imposes municipal liability. As already stated, even if the record showed that GCDC staff members did not comply with certain policies regarding the management and treatment of Plaintiff's staph infections, a final decision that is contrary to municipal policy does not impute liability on a municipality. *City of Greensboro*, 64 F.3d at 965. Plaintiff needed to show that the implementation and execution of Greenville County's policies was the causal link to the violation of his constitutional rights. *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1991); *Riddick v. School Bd.*, 238 F.3d 518, 522 (4th Cir. 2000) ("[A] municipality may be subject to liability under section 1983 if the alleged injury was caused by an identifiable municipal policy or custom."). Because section 1983 was not designed to impose municipal liability under the doctrine of *respondeat superior*, the "official policy" requirement was "intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Riddick*, 238 F.3d at 523 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).

In his own argument, Plaintiff alleges a violation of his constitutional rights because Greenville County's MRSA management protocol was not complied with and attached the Greenville County Detention Center MRSA Protocol to his objections. (Objections Attach. E.) This

11

argument and evidence essentially concede that, in addition to the federal regulations, Greenville County does have a policy to prevent, treat, and manage staph infection in its heavily populated community and compliance with those policies prevents detainees' constitutional rights from being violated.

Although the court finds that Plaintiff failed to allege a policy of Greenville County that would constitute a municipal act sufficient to find liability against it under section 1983, it will briefly state the reasons it disagrees with Plaintiff's objection that GCDC staff failed to follow MRSA management regulations. The evidence suggests that Plaintiff received treatment within no more than three days of every medical request form that he submitted, including his allegation of being forced to wear a soiled jumpsuit. The treatment consisted of antibiotics and pain medication, and the Plaintiff admitted that it relieved the symptoms of his staph infection and MRSA. While Plaintiff asserts that GCDC failed to comply with the regulations by housing him with "infected inmates," the Federal Bureau of Prisons Clinical Practical Guidelines for Management of MRSA Infections states:

> Housing: Inmates diagnosed with *MRSA infections* should be examined by a clinician to determine their risk of contagion to others. In general, inmates with non-draining wounds or wound with minimal drainage, contained by a simple dressing, can be housed in general population.

(Objections Attach. D.) (emphasis added). Nowhere in his affidavit or anywhere else in the record does Plaintiff attest or prove that either McIntosh or Foster had MRSA, making these policies and procedures applicable to his housing conditions. Furthermore, in his affidavit, Plaintiff attested only that McIntosh's alleged staph infection was a non-draining growth underneath his armpit and that Mr. Foster had cuts which had been stitched and only occasionally drained fluid. Therefore, the regulations cited by Plaintiff permitted GCDC to house inmates like McIntosh and Foster with the

general population.

Since Plaintiff has failed to show that the execution of any policy or custom of Greenville County inflicted a constitutional injury upon him, such that Greenville County can reasonably be said to have been deliberately indifferent to Plaintiff's medical needs and exposure to staph infection, the court agrees with the Magistrate Judge's recommendation that Defendants' motion for summary judgment be granted.

**D.     Any Remaining State Law Claims**

Section 1983 does not impose liability for violations of duties of care arising under a state's tort law. *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 200–03 (1989). Therefore, in order to avoid summary judgment on his claims, Plaintiff is required to submit evidence to the court sufficient to give rise to a genuine issue of fact as to whether any of his constitutional rights have been violated. Because the court grants Defendants' motion for summary judgment on all of Plaintiff's claims for which it has original jurisdiction, the court also dismisses any additional claims for relief under state law, to the extent Plaintiff's complaint can be interpreted to state such, for want of jurisdiction. 28 U.S.C. § 1367(c)(4) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"). Due to this dismissal, the court does not address Defendants' argument that they are entitled to immunity under state law.

## PLAINTIFF'S MOTION FOR EXTENSION OF TIME

Plaintiff also moved the court to grant him an extension of time to respond to the Magistrate Judge's R&R. Despite this request, Plaintiff, on the same day he filed this motion, filed a complete objection to the R&R. Therefore, the court does not find that Plaintiff requires any additional time to state his objections and denies his motion for an extension of time.

## CONCLUSION

For the foregoing reasons, the court grants the Defendants' Motion for Summary Judgement in its entirety and denies Plaintiff's Motion for Summary Judgement in its entirety. The court also denies the Plaintiff's Motion for Extension of Time.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**September 30, 2008**